IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROSE JULIANO**, <br><br>              Plaintiff, <br> **vs.** <br><br> **FIRSTSOURCE ADVANTAGE; JOHN DOE 1,** <br><br>              Defendants. | **Civil Action No.** <br><br> **2:10-cv-05421** |

**AMENDED ANSWER TO PLAINTIFF'S COMPLAINT WITH AFFIRMATIVE DEFENSES BY DEFENDANT, FIRSTSOURCE ADVANTAGE, LLC**

AND NOW, comes Defendant, Firstsource Advantage, LLC, ("FA") by and through undersigned counsel, Marshall, Dennehey, Warner, Coleman & Goggin, and hereby files an Amended Answer to Plaintiff's Complaint with Affirmative Defenses, withdrawing its bona fide error defense, and averring as follows:

A. **Answer to Jurisdiction and Venue**

1. Denied. Although this paragraph sets forth a conclusion of law to which no response is required, it is specifically denied that declaratory relief is available under the FDCPA, even through an attempt to circumvent the FDCPA through the utilization of the Federal Declaratory Judgment Act, 28 U.S.C. §§2201-02 (1976). The remaining allegations are denied as conclusions of law.

2. Denied. The allegations in this paragraph constitute conclusions of law and are denied as such. URS refers all questions of law to the Court.

1

B.    **Answer to Parties**

3.    Admitted. FA admits, upon information and belief, that Plaintiff is a natural person residing at the stated address.

4.    Admitted in part and denied in part. FA admits it is a Limited Liability Company that maintains its principal place of business at the address set out in this paragraph. FA admits that, at times, its conduct renders it a debt collector as the term is defined under the FDCPA. FA denies the remaining allegations in this paragraph, including the conclusions concerning the exceptions to default under the FDCPA as these allegations are conclusions of law and are denied as such. FA refers all questions of law to the Court.

5.    Denied. As this paragraph is not directed to FA, no response is required. To the extent that allegations in this paragraph are directed to FA, FA denies these allegations.

C.    **Answer to Plaintiff's Factual Allegations**

6.    Admitted. FA admits, and its records reflect, that on September 24, 2010, at approximately 2:37 p.m., FA attempted to contact Plaintiff by telephone in an effort to recover on her valid and delinquent debt obligation owed to Capital One Bank (USA) in an amount exceeding $1,331.90.

7.    Admitted in part and denied in part. FA admits, and its records reflect, that on September 24, 2010 at approximately 2:50 p.m., Plaintiff called FA and spoke to FA regarding her debt obligation owed to Capital One

wondering why the debt was in collections. Unless otherwise admitted, FA denies the allegations in this paragraph.

8. Admitted in part and denied in part. FA admits that in the course of its efforts to locate Plaintiff, it called a telephone number listed for Timothy Mayer ending in 9132 at approximately 2:37 p.m. on September 24, 2010. FA denies the remaining allegations in this paragraph and leaves Plaintiff to her proofs.

9. Admitted in part and denied in part. FA admits, and its records reflect, that on September 27, 2010, FA received an incoming call from an individual named "Annie" who stated that the number that was identified with Timothy Mayer was a telephone line for her eleven year old daughter. Annie requested that no further calls be made to that number. The recipient of the call stated that the person FA was trying to reach was her sister-in-law and that she would request that the Plaintiff return a call FA. FA ceased calling this number on the 24th (as FA confirmed a good contact number for the Plaintiff on the 24th after it made a call to Timothy Mayer's number for location information) and added a "cease" code on September 27, 2010 and no further calls were made to the number. Unless otherwise admitted, FA denies the allegations contained in this paragraph.

10. Admitted in part and denied in part. FA admits that its representative refused to the purpose of the call as such a disclosure would

constitute violations of 15 U.S.C. § 1692c. Unless otherwise admitted, FA denies the allegations contained in this paragraph.

11. Admitted in part and denied in part. FA admits that it did not disclose the purpose of the call to the non-debtor individual alleged to be Ms. Mayer. FA lacks sufficient knowledge, information or belief as to the truth or falsity of the remaining allegations in this paragraph, and therefore denies these allegations.

12. Admitted. FA admits that its representative informed the recipient of the September 27, 2010 call that FA would make no further calls to the number because it was not the correct number for the debtor. Unless otherwise admitted, FA denies the allegations contained in this paragraph.

13. Admitted. FA admits, and its records reflect, that an individual did call FA on September 27, 2010 at approximately 10:28 a.m., seeking information pertinent to Plaintiff's debt obligation and, as FA could not divulge any information concerning the debt to the caller pursuant to its obligations under the FDCPA, FA ended the call. Unless otherwise admitted, FA denies the allegations contained in this paragraph.

14. Admitted in part and denied in part. FA admits that it received another call from in individual on September 27, 2010 at approximately 10:33 a.m. where the caller stated that she would relay the earlier message to the debtor and expressed her concern about her young daughter being contacted. FA denies that its representative told the caller that it was permitted to make

the earlier call.  Unless otherwise admitted, FA denies the allegations contained in this paragraph.

15. Denied.  FA lacks sufficient knowledge, information or belief to respond to this allegation, and therefore denies and demands strict proof of the contention at the time of trial, if relevant.

16. Denied.  FA lacks sufficient knowledge, information or belief as to whether Plaintiff elected to disclose her debt information to any third party and therefore denies these allegations and demands strict proof thereof at the time of trial, if for some reason these allegations could be relevant to any claims against FA.

17. Admitted in part and denied in part.  FA admits, and its records reflect, that on September 27, 2010 at approximately 1:21 p.m., Plaintiff called FA to inquire as to why her Capital One account was in collections. FA denies Plaintiff's gross mischaracterization of this call initiated by Plaintiff to FA and denies the remaining allegations in this paragraph.

18. Denied.  FA denies the allegations contained in this paragraph as its records reflect that no such conversation took place between Plaintiff and any representative of FA.  Strict proof of the allegations in this paragraph is demanded of Plaintiff.

19. Denied.  FA lacks sufficient knowledge, information or belief as to the truth or falsity of these allegations and therefore denies the allegations in this paragraph and leaves Plaintiff to her proofs.

20. Denied. FA denies its conduct could reasonably or rationally be construed as creating any liability under the FDCPA and FA denies that it is a direct or proximate cause of any injury to plaintiff, including injury resulting in emotional distress, anxiety, or embarrassment and denies liability or any damages that purportedly flow therefrom. Strict proof of liability, causation and damages purportedly arising as a result of the alleged conduct by FA is demanded of Plaintiff.

21. Admitted. FA admits that FA's employees were acting within the scope of their employment with FA in their attempts to locate and recover on Plaintiff's valid and delinquent debt obligation owed to Capital One.

22. Denied. The allegations contained in this paragraph constitute conclusions of law and are denied as such. FA refers all questions of law to the Court. Further, Plaintiff makes no allegations that FA made any false threats, including a threat of instituting legal action, because no such threats were made to Plaintiff.

   D.   **Answer to Plaintiff's Causes of Action**

   **COUNT I - FDCPA**

23. No response is necessary as Plaintiff simply incorporates foregoing allegations in this paragraph. To the extent that a response is required of FA, FA incorporates its responses to the foregoing allegations asserted in paragraphs 1 through 22 as though fully set forth herein.

24.  Denied.  FA lacks sufficient knowledge, information or belief to respond to this allegation, and therefore denies the allegations contained in this paragraph.  The remaining allegations contained in this paragraph constitute conclusions which are denied as such.  SFA refers all questions of law to the Court.

25.  The allegations contained in this paragraph constitute conclusions of law and are denied as such.  FA refers all questions of law to the Court.  Responding further to each of Plaintiff's sub-paragraphs contained in this paragraph:

    a)    Denied as stated, and denied as a conclusion of law.

    b)    Denied as stated, and denied as a conclusion of law.

    c)    Denied as stated, and denied as a conclusion of law.

    d)    Denied as stated, and denied as a conclusion of law.

## ANSWER TO JURY TRIAL DEMAND

26.  Admitted in part and denied in part.  FA admits that Plaintiff has requested a trial by jury.  FA denies that Plaintiff is entitled to a trial by jury in the absence of viable claims against FA.

## AFFIRMATIVE DEFENSES
### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff suffered no damage from the alleged violations by FA and therefore is not entitled to any award of damages, attorney fees or costs.

### THIRD AFFIRMATIVE DEFENSE

Any violation of the law or damage suffered by Plaintiff, which FA denies, was due to the affirmative actions and/or omissions of Plaintiff or others and does not give rise to any liability of FA.

### FOURTH AFFIRMATIVE DEFENSE

Any violation of the law or damage suffered by Plaintiff, which FA denies, was due to the affirmative actions and/or omission of Plaintiff or others and does not give rise to any claim of damages against FA

### FIFTH AFFIRMATIVE DEFENSE

Declaratory relief is unavailable to private litigants for claims premised on the FDCPA. See Weiss v. Regal Collections, 385 F.3d 337, 341-42 (3d Cir. 2004). Additionally, plaintiff seeks declaratory relief premised on the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02 (1976), to circumvent the purposeful exclusion of declaratory relief under the FDPCA, and plaintiff's attempt to seek declaratory or injunctive relief should be dismissed or withdrawn. See Weiss, supra., and see Sibley v. Fulton Dekalb Collection

Service, 677 F.2d 830, 834 (11th Cir. 1982)("The thrust of the [FDCPA] is prevention of harassment and abuse as well as false, deceptive or misleading practices.... equitable relief is not available to an individual under the civil liability section of the Act").

Additionally, The U.S. District Court for the Central District of Illinois thoroughly analyzed this issue in Zanni v. Lippold, 119 F.R.D. 32, 33 (D. Ill. 1988) as follows:

> In Duran v. Credit Bureau of Yuma, 93 F.R.D. 607 (D. Ariz. 1982), the court held that it was without jurisdiction to grant injunctive relief to a consumer aggrieved by a debt collector's failure to comply with the requirements of the Fair Debt Collection Practices Act (FDCPA). That view is supported by the language of the FDCPA, . . . . by the Act's legislative history; by a comparison of the Act with other consumer protection statutes and cases which have specifically ruled that comparable civil liability or enforcement provisions should be narrowly construed. Id. at 608 (footnotes omitted). Similarly, in Strong v. National Credit Management Co., 600 F. Supp. 46 (E.D. Ark. 1984), the court stated: "The FDCPA specifically authorizes the Federal Trade Commission (FTC) to seek injunctive relief (15 U.S.C. § 1691(l)) and defendant persuasively argues that this is a strong indication of Congress' intent to limit private actions to damage claims." Thus, the Court held no private action for injunctive relief lies under the statute. Finally, we consider the Act's legislative history. The Senate Report on the FDCPA, S. Rep. No. 382, 95th Cong., 2d Sess. 5, *reprinted in* 1977 U.S. Code Cong. & Ad. News 1695, 1699-1700, sets out detailed civil liability penalties. These penalties, however, are neatly divided according to who is bringing the action. Consumers are allowed "actual damages . . . . as well as any additional damages the court deems appropriate, not exceeding $ 1,000." Significantly, the report does not say "as well as any additional *relief* the court deems appropriate." Clearly, Congress was allowing only for monetary damages where private parties were concerned. Conversely, in the following section of the report, entitled "Administrative enforcement," the report states: "The Federal Trade Commission is authorized to treat violations of the act as violations of a trade regulation rule, which empowers the Commission to obtain restraining orders and seek fines in federal district court." Thus,

Congress did provide for injunctive relief under the Act, but reserved its availability to the FTC. Undoubtedly, there was a conscious decision made by Congress to divide the available relief. We will not upset Congress' decision.

Therefore, Plaintiff's efforts to seek declaratory relief by circumventing the FDCPA through application of the Federal Declaratory Judgment Act, as expressed in ¶1 and in her Prayer for Release, A., fails as a matter of law and should be withdrawn, stricken or dismissed.

### SIXTH AFFIRMATIVE DEFENSE

In the event Plaintiff is able to adequately plead a violation of the FDCPA, her entitlement to statutory damages is capped at $1,000 per legal action not per violation.  See Goodmann v. People's Bank, et al., 2006 U.S. App LEXIS 31555 (3rd Cir. Dec. 21, 2006); Brown v. Law Offices of Butterfield, 2004 U.S. Dist. LEXIS 9822, *16 n8 Civil Action NO. 03-CV-05850 (ED Pa., May 24, 2004); Dowling v. Kucker Kraus & Bush, LLP, 2005 U.S. Dist. LEXIS 11000 (S.D.N.Y. 2005); Mann v. Acclaim Fin Servs., 348 F. Supp. 2d 923, 926 (SD.Ohio 2004); and see Ganske v. Checkrite, Ltd., 1997 U.S. Dist. LEXIS 4345, 12-13 (D. Wis. 1997): Wright v. Finance Service of Norwalk, Inc., 22 F.3d 647, 650-51 (6th Cir. 1994); Harper v. Better Business Services, Inc., 961 F.2d 1561, 1563 (11th Cir. 1992); Donahue v. NFS, Inc., 781 F. Supp. 188, 191 (W.D.N.Y 1991); Wiener v. Bloomfield, 901 F. Supp. 771 778 (S.D.N.Y. 1995); Teng v. Metropolitan Retail Recovery, 851 F. Supp. 61, 69 (E.D.N.Y. 1994); Beattie v. D.M. Collections, Inc., 764 F. Supp. 925, 928 (D.Del. 1991); Harvey v. United Adjusters, 509 F. Supp. 1218, 1222 (D.Or. 1981).

**SEVENTH AFFIRMATIVE DEFENSE**

Any harm allegedly incurred by Plaintiff was not the result of the conduct of FA – which consisted of (1) making a location call to Timothy Mayer; and (2) refusing to disclose debt information to "Annie" – a non-debtor – despite her efforts to force such disclosure.  Plaintiff's harm, if any, was the result of Plaintiff electing to disclose her debt to "Annie".  In the Plaintiff's own words, as set out in the Complaint, the cause of Plaintiff's harm was Plaintiff, not any violative conduct on the part of FA.  Therefore, FA specifically reserves the right to seek a finding of this Honorable Court to deem this matter as being brought in bad faith and for the purposes of harassing FA and to recover its reasonable costs, including attorneys' fees, under 15 U.S.C. §1692k(a)(3).

**WHEREFORE**, Defendant, Firstsource Advantage, LLC, respectfully request this Honorable Court enter judgment in its favor dismissing Plaintiff's Complaint and granting all other relief as the Court deems just and proper.

                             **MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**

By:   /s/ *Ronald M. Metcho, Esquire*
       RONALD M. METCHO, ESQ.
       1845 Walnut Street, 17th Floor
       Philadelphia, PA 19103
       215-575-2595 / 215-575-0856 (f)
       rmmetcho@mdwcg.com
       Attorneys for Defendant
       Firstsource Advantage, LLC

Dated: March 24, 2011